1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| ALICE A., | |
|---|---|
| Plaintiff, | Case No. C20-5756 RAJ |
| v. | **ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks review of the denial of her applications for supplemental security income and disability insurance benefits.  Plaintiff contends the ALJ erred by failing to (1) give valid reasons to reject Plaintiff's testimony, (2) give valid reasons to reject lay witness testimony, (3) properly consider several medical opinions, (4) properly apply the Medical-Vocational Guidelines, and (5) properly assess Plaintiff's ability to work at steps four and five of the disability evaluation process.  Dkt. 35, pp. 1–2.  Plaintiff contends the Appeals Council erred by failing to properly consider new evidence submitted after the ALJ's decision.  Dkt. 35, p. 1.  Plaintiff contends the case must be remanded because the statute for removal of the Commissioner of Social Security was unconstitutional.  *Id.*  As discussed below, the Court **REVERSES** the Commissioner's final decision and

1    **REMANDS** the matter for further administrative proceedings under sentence four of 42

2    U.S.C. § 405(g).

## BACKGROUND

Plaintiff is 36 years old, has at least a high school education, and has worked as a

fast-food worker.  Admin. Record ("AR") (Dkt. 21) 137.  On July 11, 2018, Plaintiff

applied for disability insurance and supplemental security income benefits, alleging

disability as of April 1, 2010.  AR 124, 278, 463–64.  Plaintiff's applications were denied

initially and on reconsideration.  AR 324–47, 350–73.  Plaintiff had previously filed an

application for disability insurance benefits, which was initially denied on October 5,

2017.  *See* AR 124.  The ALJ reopened this application and addressed it with Plaintiff's

subsequent applications.  *Id.*

ALJ Glenn Myers conducted a hearing on August 15, 2019, after which he issued

a decision finding Plaintiff not disabled.  AR 274–321.[1]  In relevant part, ALJ Myers

found Plaintiff had severe impairments of spinal impairments, obesity, headaches,

depressive disorder, anxiety disorder (including posttraumatic stress disorder),

personality disorder, and substance use disorder.  AR 127.  The ALJ found Plaintiff had

the residual functional capacity ("RFC") to perform light work with additional cognitive,

social, and adaptive limitations.  AR 129–30.

On May 29, 2020, the Appeals Council denied Plaintiff's request for review.  AR

110–12.  Plaintiff subsequently submitted a request to the Appeals Council to reopen her

---

[1] The ALJ held a hearing on April 9, 2019, but postponed it to allow Plaintiff to find an attorney.  AR 250–73.

claims, which the Appeals Council denied on September 9, 2020.  AR 1–9, 102–05.  The

ALJ's decision therefore became the Commissioner's final decision.  *See* 20 C.F.R. §§

404.981, 416.1481.

## DISCUSSION

The Court may set aside the Commissioner's denial of Social Security benefits

only if the ALJ's decision is based on legal error or not supported by substantial evidence

in the record as a whole.  *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020).

As an initial matter, Plaintiff's counsel spends much of the portion of the opening

brief not dedicated to her constitutional challenge describing the evidence, often not

using complete sentences.  Plaintiff's counsel claims to be challenging the ALJ's

rejection of statements and opinions from multiple individuals, yet fails to clearly identify

all but a few of the individuals and the ALJ's errors.  Plaintiff's counsel blames this

failure to fully articulate arguments on "[t]he novel (and very recent) issues in *Seila Law*,

etc.," and claims to "reserve our right to Reply [sic] to defendant's brief."  Dkt. 35, p. 14.

As counsel should know, the Court "'ordinarily will not consider matters on appeal that

are not specifically and distinctly argued in an appellant's opening brief.'"  *Carmickle v.

Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161, n.2 (9th Cir. 2008) (quoting *Paladin

Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).  The Court

therefore limits its review to the ALJ's analysis of testimony and opinions specifically

raised by Plaintiff in her opening brief.  The Court also expects counsel to present

arguments in a clear, concise manner, specifying the errors alleged and making

substantive arguments addressing them.  *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. . . . We require contentions to be accompanied by reasons.").

### A.    Plaintiff's Testimony

Plaintiff contends the ALJ erred by rejecting her testimony regarding the severity of her symptoms.  Dkt. 35, pp. 9–14.  Plaintiff testified she cannot work due to anxiety. AR 301–02.  She reported thoughts of suicide and difficulty functioning due to long-term abuse.  AR 579–86.  She testified she visited the emergency room in February 2018 for numbness and difficulty breathing, possibly due to a migraine.  AR 306.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014).  At this stage, the claimant need only show the impairment could reasonably have caused some degree of the symptoms; she does not have to show the impairment could reasonably be expected to cause the severity of symptoms alleged. *Id.*  The ALJ found Plaintiff met this step.  AR 131.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "by offering specific, clear and convincing

reasons for doing so.  This is not an easy requirement to meet."  *Garrison*, 759 F.3d at 1014–15.

The ALJ discounted Plaintiff's mental symptom testimony because he determined Plaintiff's complaints were inconsistent with the overall medical evidence, she received minimal treatment, she made inconsistent statements regarding her medication use, her mental health symptoms were primarily due to her housing situation, and Plaintiff's complaints were inconsistent with her activities of daily living.  AR 131–35.  The ALJ discounted Plaintiff's physical symptom testimony because he found it was inconsistent with the overall medical evidence.  AR 133–34.

1.    Plaintiff's Mental Symptom Testimony

The ALJ erred in rejecting Plaintiff's testimony as inconsistent with the overall medical evidence.  An ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of her symptoms."  *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).  The ALJ's discussion of the medical evidence failed to meet this standard.  For example, the ALJ determined records contained no positive findings of psychological impairment when those records documented Plaintiff had moderate to severe depression and anxiety based on PHQ-9 and GAD-7 test results.  *See, e.g.*, AR 830–33, 835.  Other records of appointments aimed at treating Plaintiff's mental health regularly documented abnormal psychological functioning, such as slow speech, depressed mood, blunted affect, poor insight, and

suicidal ideation. *See, e.g.*, AR 593, 597, 609–10, 632, 662, 679, 682, 755, 765, 770–72.

The ALJ similarly erred in rejecting Plaintiff's testimony based on a finding that she received minimal treatment. First, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal quotation marks and citation omitted). Plaintiff's providers found at times she had poor insight and judgment. *See, e.g.*, AR 593, 604, 619. Moreover, Plaintiff asserted, and the ALJ acknowledged, that she could not always afford mental health treatment. *See* AR 130, 609, 616. Second, the ALJ faulted Plaintiff for refusing to take psychiatric medications without adequately addressing her stated reason for refusal. Plaintiff told providers she did not want to use psychotropic medications because they had not been effective, and she associated them with childhood trauma involving forced medication. *See, e.g.*, AR 599, 652–53, 779, 876.

The ALJ erred in rejecting Plaintiff's testimony based on a finding that Plaintiff made inconsistent statements regarding her medication use. Much of the ALJ's analysis here is similar to his finding that Plaintiff failed to seek adequate treatment, and fails for the reasons previously described. The ALJ also relied on a finding that Plaintiff reported to her primary care clinic in November 2016 that she had not taken psychiatric medication since age 12, "[d]espite her prescriptions of psychiatric medication in recent years." AR 132. But the ALJ did not identify any prescriptions from recent years, and the Commissioner notes only a prescription for hydroxyzine from March 2011. *See* AR

816.  To the extent Plaintiff failed to disclose this prescription, it is hardly the type of misrepresentation that would justify wholesale rejection of her testimony.

The ALJ did not err in finding Plaintiff's housing situation was a cause of her symptoms.  *See* AR 132.  But the ALJ failed to address the extent to which Plaintiff's inability to change her housing situation was due to her mental impairments.  Moreover, the ALJ's finding regarding the impact of Plaintiff's housing situation is not enough, standing alone, to support rejection of Plaintiff's testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding that "one weak reason," even if supported by substantial evidence, "is insufficient to meet the 'specific, clear and convincing' standard" for rejecting a claimant's testimony) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).

Finally, the ALJ erred in rejecting Plaintiff's testimony regarding the severity of her mental impairments based on Plaintiff's activities of daily living.  The ALJ first reasoned Plaintiff ran an online business during some of the alleged disability period.  AR 134.  But substantial evidence does not support the ALJ's finding that this rose to the level of activity that contradicted Plaintiff's claims.  The ALJ identified a single reference where Plaintiff's employment was described as full time, but Plaintiff reported it was not, her earnings from the business were minimal, and the ALJ found it was not substantial gainful activity.  *See* AR 126–27, 470, 610, 835.  The ALJ did not point to substantial evidence showing Plaintiff's business involved activities contradicting her claims of impairment.

The ALJ next reasoned Plaintiff engaged in activities indicating a level of function above what she claimed.  For example, Plaintiff "attended a comedy performance sometime in 2017, a magic/comedy performance in November 2018, and a concert around March 2019."  AR 135.  Although these activities show Plaintiff had some level of social functioning, these isolated incidents do not establish that Plaintiff could carry on the sustained effort necessary for full-time work.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).

In sum, the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her mental impairments.

2.   Plaintiff's Physical Symptom Testimony

Plaintiff has failed to show the ALJ harmfully erred by discounting her testimony of physical impairments.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error).  The ALJ primarily rejected this testimony as inconsistent with the overall medical evidence. *See* AR 133–34.  Plaintiff cited to several medical records and raw medical imaging reports, but failed to identify why the ALJ's interpretation of that evidence was irrational. Unlike the ALJ's analysis of the medical evidence regarding Plaintiff's mental impairments, the evidence to which Plaintiff cited regarding her physical impairments does not clearly undermine the ALJ's findings.  Plaintiff has thus failed to show the ALJ

harmfully erred in rejecting her testimony regarding her physical impairments.  Given the

additional evidence Plaintiff submitted to the Appeals Council, however, which, as

discussed below, the ALJ should review on remand, nothing in this decision precludes

the ALJ from reevaluating Plaintiff's testimony regarding her physical impairments in

light of new evidence.

### B.    Lay Witness Statements

Plaintiff vaguely challenges the ALJ's rejection of lay witness statements.  First,

Plaintiff contends the ALJ erred by "fail[ing] to credit a highly detailed first-hand

account of [Plaintiff's] travails."  Dkt. 35, p. 9.  Based on her citation, Plaintiff is

challenging the ALJ's rejection of a statement from Kevin McCarley.  *See id.* (citing AR

555–57).  Plaintiff then mentions her mother's statement in an incoherent partial

sentence, failing to identify any specific errors.  *Id.*  Plaintiff has failed to adequately

raise a challenge to the ALJ's evaluation of lay witness testimony, other than the

statement of Mr. McCarley.  *See Carmickle*, 533 F.3d at 1161, n.2.

Mr. McCarley submitted a written statement describing his observations about

Plaintiff, particularly her living environment.  AR 555–57.  Mr. McCarley stated he

believed Plaintiff "is completely incapable of working in [a 'normal' job with a typical

nine to five shift]."  AR 555.

In determining disability, "'an ALJ must consider lay witness testimony

concerning a claimant's ability to work.'"  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina*, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

The ALJ found Mr. McCarley's statements unpersuasive. AR 135. The ALJ reasoned Mr. McCarley's statements were inconsistent with Plaintiff's activities, treatment records, and examination findings. *Id.* The ALJ's reasoning here is the same as his reasoning in rejecting Plaintiff's mental symptom testimony, and thus fails for the same reasons. *See supra* Part A.1. The ALJ therefore erred in rejecting Mr. McCarley's statements.

## C.    Medical Opinions

Plaintiff contends the ALJ erred in rejecting certain medical opinions in the record. Dkt. 35, pp. 14. Plaintiff's discussion is vague and disorganized, making it difficult to discern which medical opinions the rejection of which Plaintiff is challenging. Plaintiff appears to challenge the ALJ's rejection of opinions from Greg Saue, M.D., and/or Renee Eisenhauer, Ph.D., and Bruce Duthie, Ph.D. Dkt. 35, pp. 14. The Court limits its discussion to these opinions.

### 1.    Dr. Saue and Dr. Eisenhauer

Plaintiff references opinions from Dr. Saue and Dr. "Sauer." Dkt. 35, p. 14. From context, this appears to be a challenge to the ALJ's interpretation of Dr. Eisenhauer's opinions. *See id.* Plaintiff makes no substantive challenge to the ALJ's interpretation of

Dr. Saue's opinions.  Plaintiff has therefore failed to show the ALJ harmfully erred in

evaluation Dr. Saue's opinions.  *See Indep. Towers of Wash.*, 350 F.3d at 929.

Plaintiff does not mention Dr. Eisenhauer, but references the disability

determination in which her opinions are contained.  *See* Dkt. 35, p. 14 (citing AR 362–

73).  Plaintiff contends Dr. "Sauer" opined Plaintiff had "[m]arked difficulty in

interacting appropriately w/ the public, supervisors and coworkers.  She will have

extreme difficulty responding to usual work situations and to changes in a routine work

setting."  *Id.*  Plaintiff contends this contradicts the ALJ's decision.  *Id.*

Plaintiff misreads Dr. Eisenhauer's opinions.  Dr. Eisenhauer opined Plaintiff was

"moderately limited" in social and adaptive abilities.  AR 370.  Dr. Eisenhauer opined

Plaintiff "would do best w[ith] superficial interaction w[ith] the general public,

supervisors, and a small group of coworkers.  [She] would do best w[ith] hands off

supervision."  *Id.*  Plaintiff has not addressed these opinions or shown the ALJ

improperly rejected them, and has thus failed to show harmful error.  *See Ludwig*, 681

F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407–09).

2.    Dr. Duthie

Plaintiff contends the ALJ "inappropriately discounted" Dr. Duthie's opinions.

Dkt. 35, p. 14.  Dr. Duthie examined Plaintiff on September 13, 2017.  AR 609–13.  Dr.

Duthie opined, among other things, that Plaintiff had "marked difficulty interacting

appropriately with the public, supervisors and coworkers.  She will have extreme

difficulty responding appropriately to usual work situations and to changes in a routine

work setting." AR 613.

The ALJ found these opinions "unpersuasive." AR 136.  The ALJ reasoned they were inadequately supported by Dr. Duthie's exam findings, and inconsistent with the overall medical evidence.  *Id.*  The ALJ reasoned Dr. Duthie's exam "occurred during a long lapse in the claimant's otherwise minimal pursuit of mental health care." *Id.*  And the ALJ reasoned Dr. Duthie "gave undue credence to the claimant's self-reporting of psychological issues." *Id.*

Plaintiff has again failed to show harmful error.  *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407–09).  Plaintiff did not present any substantive argument about the reasons the ALJ gave for rejecting Dr. Duthie's opinions.  *See* Dkt. 35, p. 14.

**D.     Application of the Medical-Vocational Guidelines**

Plaintiff contends the ALJ erroneously applied the Medical-Vocational Guidelines because "Plaintiff's off-task issues arise out of mental impairments."  Dkt. 35, p. 16. Plaintiff has failed to state a clear argument here, but the Court need not reach this issue. On remand, the ALJ must reevaluate portions of the evidence, and will therefore need to reevaluate application of the Medical-Vocational Guidelines.

///

**E.     Steps Four and Five**

Plaintiff contends the ALJ erred in making certain findings regarding Plaintiff's ability to stay on-task and maintain attendance, and in failing to properly resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational

Titles.  Dkt. 35, p. 16.  Once again, the Court need not reach these issues because the ALJ

on remand must reevaluate some of the evidence, and therefore must reevaluate steps

four and five of the disability evaluation process.  *Cf. Lingenfelter v. Astrue*, 504 F.3d

1028, 1040–41 (9th Cir. 2007) (holding the ALJ's RFC assessment and step five

determination were not supported by substantial evidence where the RFC and

hypotheticals to the vocational expert failed to include all of the claimant's impairments).

### F.     New Evidence Before the Appeals Council

Plaintiff contends new evidence she submitted to the Appeals Council after the

ALJ's decision requires remand.  Dkt. 35, pp. 6–9.  Because the Court is remanding this

matter for reconsideration of Plaintiff's testimony, among other things, the Court need

not resolve this issue.  On remand, the ALJ shall consider the new evidence Plaintiff

submitted to the Appeals Council.

### G.     Removal of the Commissioner of Social Security

Plaintiff contends the statutory clause for removal of the Commissioner of Social

Security is unconstitutional, rendering the Commissioner's appointment invalid, and

therefore rendering the ALJ's nondisability decision invalid.  Dkt. 35, pp. 3–6.  Removal

of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3).  Under

§ 902(a)(3), the Commissioner may only be removed from office "pursuant to a finding

by the President of neglect of duty or malfeasance in office."  *Id.*  Two recent Supreme

Court decisions call this clause into question.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183

(2020), the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB")

removal structure, which allowed for the CFPB Director to be removed by the President

only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3),

violated the separation of powers by insulating the Director from removal by the

President.  *Seila Law*, 140 S. Ct. at 2197.

The Supreme Court addressed a removal provision again the following year in

*Collins v. Yellen*, 141 S. Ct. 1761 (2021).  There, the Court held a provision limiting the

President to removing the Director of the Federal Housing Finance Agency ("FHFA")

only for cause violated the separation of powers.  *Collins*, 141 S. Ct. at 1783 (holding that

"*Seila Law* is all but dispositive").

A straightforward application of *Seila Law* and *Collins* dictates a finding that the

removal provision in § 902(a)(3) violates separation of powers.  As in *Seila Law* and

*Collins*, the Social Security Commissioner is a single officer at the head of an

administrative agency and removable only for cause.  *See* 42 U.S.C. § 902(a)(3).  Section

902 suffers from the same defect as the removal provisions at issue in *Seila Law* and

*Collins*.  The Court accordingly concludes § 902(a)(3) violates separation of powers. *See*

*Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal

Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*,

2021 WL 2981542, at *7 (July 8, 2021).

Plaintiff contends because the removal clause was unconstitutional, Commissioner

ORDER REVERSING DENIAL OF BENEFITS AND
REMANDING FOR FURTHER PROCEEDINGS - 14

Saul's appointment and tenure were invalid.[2]  This argument fails.

First, the removal provision in § 902(a)(3) is severable from the remainder of the statutes governing the Social Security Administration ("SSA").  In *Seila Law*, the Court found the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased.  140 S. Ct. at 2209–10, 2245.[3]  Similarly, if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional.

Second, the removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA Director's appointment invalid, and thus did not render the FHFA's actions under the Director void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.").  The same is true here.  The infirm *removal* provision does not render

---

[2] The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Nancy Berryhill. *See* Social Security Ruling 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019).  Defendant contends Ms. Berryhill, as Acting Commissioner, was not subject to the same removal provision as Commissioner Saul.  The Court need not reach this issue because, as explained below, Plaintiff cannot establish a link between the removal provision at issue here and her claims.

[3] Four Justices dissented from Chief Justice Roberts's lead opinion holding the CFPB removal provision was unconstitutional, but agreed that "*if* the agency's removal provision is unconstitutional, it should be severed." *Id.* at 2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

ORDER REVERSING DENIAL OF BENEFITS AND
REMANDING FOR FURTHER PROCEEDINGS - 15

Commissioner Saul's *appointment* invalid, which in turn does not render the ALJ's disability decision void.  Plaintiff's reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018), is therefore inapt.

Plaintiff contends that "[b]ecause the Social Security Administration's structure unconstitutionally violates the separation of power [sic], the underlying ALJ (and AC decision) [sic] presumptively applied an inaccurate legal standard at the administrative level." Dkt. 35, p. 4.  Although the Court has found that the ALJ failed to meet the appropriate legal standard in rejecting some of the evidence, Plaintiff's argument here is misplaced.  Plaintiff has failed to show any connection between the unconstitutional removal clause and the ALJ's decision denying her benefits.  *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions.  And nothing commands us to vacate the decisions below on that ground.")); *cf. Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

### H.    Scope of Remand

Plaintiff cursorily asks the Court to remand this matter for an award of benefits. Dkt. 35, p. 17.  Except in rare circumstances, the appropriate remedy for an erroneous denial of benefits is remand for further proceedings.  *See Leon v. Berryhill*, 880 F.3d

ORDER REVERSING DENIAL OF BENEFITS AND
REMANDING FOR FURTHER PROCEEDINGS - 16

1041, 1043 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014)).  Plaintiff has not analyzed the factors the Court considers before remanding for an award of benefits, nor shown any rare circumstances.  The Court will remand for further administrative proceedings.

On remand, the ALJ shall reevaluate Plaintiff's testimony regarding the severity of her mental impairment symptoms, and Mr. McCarley's statements.  The ALJ shall consider all evidence submitted after the previous ALJ decision, and reevaluate the evidence, as necessary.  The ALJ shall reassess Plaintiff's RFC, and all relevant steps of the disability evaluation process.  The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 24th day of November, 2021.

The Honorable Richard A. Jones
United States District Judge